BASS *v.* THE STATE.

1. When on a trial for fornication there was evidence for the State tending to show that the accused and the other alleged guilty party were, on a designated occasion, in a position strongly indicating that the act charged in the indictment was being committed, it was competent for the State to supplement this evidence by proving lascivious conduct between these parties on a previous occasion, such proof being relevant as throwing light upon their relations toward each other, and as tending to illustrate the real nature of their conduct upon the occasion first above mentioned.

2. The State in such case having elected the occurrence which was the later in point of time, as the one upon which it would rely for a conviction, the court very properly instructed the jury that they could not convict the accused upon the evidence relating to the prior occurrence, but that this testimony was for their consideration "simply to show the relations between the parties, and as a mere circumstance in the case, in connection with other circumstances, to be considered" by the jury.

3. Under the circumstances above recited, the evidence relating to the former occasion was certainly not rendered inadmissible merely because it had not been introduced before the grand jury.

4. Mere failure to charge upon the law relating to the impeachment of witnesses is not cause for a new trial, when it appears that the attention of the court was not directed to this matter, and that no request to charge concerning it was made.

5. The evidence warranted the verdict, and there was no error in refusing to grant a new trial.

<center>Argued December 6, — Decided December 21, 1897.</center>

Indictment for fornication. Before Judge Harris. City court of Floyd county. November 3, 1897.

The indictment against Louis Bass for illicit intercourse with Bessie Walker contained four counts, charging respectively fornication, adultery, adultery and fornication, and fornication and adultery, all alleged to have been committed on May 28, 1897. Upon the indictment appear the names of J. M. Johnson, Abe Richardson and Robert Tripp as witnesses. For the State Abe Richardson testified, that about May 28, 1897, he saw Louis Bass and Bessie Walker, about 9 o'clock at night, on the sidewalk of Bluff street, near a tree in front of a vacant lot "just this side" of a named person's residence, engaged in sexual intercourse (giving details indicating that they were so engaged). An electric light close by made it almost like day. Witness could see a person 100 or 150 yards. Robert Tripp was 20 or 30 yards in front of him, and was by witness overtaken and asked if he saw those parties, and if he knew who they were. He never saw said parties together on the sidewalk then, or anywhere else at any other time. It was a public sidewalk, and people were passing there frequently. He testified before the grand jury who found this bill, that he was positive about Louis Bass and Bessie Walker having sexual intercourse when he got up to them. Jim Johnson, and his wife Anna, both swore for the State, that they knew nothing

about the transaction to which Richardson testified, but that about December, 1896, they saw Louis Bass and Bessie Walker both undressed in her room; they saw no sexual intercourse, but only saw Bass catch Bessie by the leg and slap his hand on her thigh. They did not go before the grand jury and were not sworn on this bill before them, nor were they witnesses on the bill. Bessie Walker is a single woman, and Louis Bass is a single man.

For the defendant Nelson Coulter testified, that about June 22, 1897,—he could not remember the date,—between eight and nine o'clock, he was in company with Louis Bass on Bluff street, and when they arrived at a designated vacant lot witness climbed over a fence and went to the bushes to attend to a call of nature, and agreed to wait until defendant returned. He returned in about ten minutes, and when he was about even with witness, some one called to him to wait a minute. This was Bessie Walker. They stood there and talked for about ten minutes regarding a case in which Bessie was interested. Witness was just over the fence, and close enough to have put his hand on them. He saw them distinctly the whole time they were there; and positively they did not have sexual intercourse. Several persons passed while they were talking. Witness saw Abe Richardson pass, but can not say whether Tripp passed or not.—Tripp testified, that at the time referred to by Richardson in his testimony, having passed Louis Bass and Bessie Walker, and met Richardson, he was asked by Richardson if he saw those folks back there. Witness said he saw them but did not know who they were. Richardson said they were Bessie Walker and Louis Bass, and he was going to watch them and see what they did. He asked witness to go back with him and watch them; witness refused. When he passed them they were standing up talking. He saw nothing wrong. If they had been having sexual intercourse he would have seen them; he saw no such.—Lowrey and Pollock testified that they were members of the grand jury which found the indictment on which the trial was being had; that Abe Richardson testified before that body that he was not positive that Louis Bass and Bessie Walker were having sexual intercourse when he saw

them, but he saw Bessie's leg up to her knee; that otherwise he swore to the same state of facts before the grand jury that he has sworn on this trial; that there was no evidence before the grand jury of any other date or transaction except the one testified about by Richardson, and the bill was found upon evidence relating to this transaction alone.

The State elected to proceed upon the count charging fornication, and upon the testimony tending to connect defendant with the specific transaction testified to by Richardson alone; and the jury found defendant guilty of that offense.   His motion for a new trial was overruled, and he excepted.   The motion alleges, in addition to the general grounds, that the court erred in charging the jury, that they could not convict defendant of the act as testified to by Jim and Anna Johnson, but that this testimony was for consideration simply to show the relations of the parties, and as a mere circumstance in the case in connection with the other evidence to be considered by them.   It is alleged that this tended to mislead the jury, and that the testimony of the Johnsons should not have been submitted to the jury at all, it being outside of the case for which defendant was indicted and being tried.   Further, that the court erred in allowing the testimony of the Johnsons to go before the jury, over defendant's objection that said testimony was not before the grand jury, and that body did not investigate the transaction to which the Johnsons testified; that said witnesses' names did not appear upon the indictment; and that defendant was not put on notice of such testimony, and was thereby less prepared for trial.   He was never indicted for that act, but for the specific act as testified to by Richardson.   Also, that the court erred in not charging the jury, though not so requested, upon the subject of impeaching witnesses; such charge being rendered pertinent and essential by the testimony of Lowrey and Pollock.

*McHenry & Nunnally,* for plaintiff in error.

*Moses Wright,* solicitor-general, and *Harper Hamilton,* contra.

FISH, J.   1. Where the State, in a trial for fornication, relies for a conviction upon proof showing that the accused, an

unmarried man, and the other alleged guilty party, an unmarried woman, were, at a certain time and a designated place, in a position relative to each other which, taken in connection with other proven circumstances, strongly indicated that the act of sexual intercourse was taking place between them, evidence of former lascivious familiarities between the same parties, within a comparatively recent period, increases the probability that the offense charged was actually committed at such time and place. Proof of such lascivious conduct between the parties as that shown by the evidence objected to in the present case, in the very nature of things, and in accordance with observations of human conduct, shows a tendency or disposition in each party toward the commission of the sexual act with the other; it shows that modesty and self-respect, strong safeguards of virtue, had been previously broken down, and that the parties were already upon such terms of lascivious intimacy as to render it probable that, given the opportunity, they would indulge in sexual intercourse with each other. Testimony of this character is peculiarly relevant where, as in this case, the evidence as to the surroundings of the parties at the time that the offense is alleged to have been committed is such as to show a boldness and want of care to avoid detection, which might seem unnatural and improbable, unless it were shown that their previous conduct toward each other was of such a character as to induce the belief that illicit relations had already been established between them. In the case under consideration, the evidence as to the previous lascivious conduct between the parties strongly tended to create the belief in a rational mind that they had been criminally intimate prior to the occurrence upon which the State relied for a conviction. It was clearly admissible for the purpose of throwing light upon the relations existing between them, and as tending to illustrate the real nature of their conduct at the time and on the occasion when the State claimed the offense was perpetrated. The authorities which sustain its admissibility are abundant. In Gillett on Indirect and Collateral Evidence, § 58, the rule in reference to the admissibility of such evidence in a case of this kind is stated as follows: "Where the question at issue is as

to the existence of a criminal intimacy at a certain time, evidence of prior acts of indecent familiarity is competent as tending to show an antecedent probability." See the numerous cases from the courts of different States, there cited in support of this proposition; also Abbott's Trial Brief, Criminal Causes, § 598, subheads, Adultery and Incest, and the cases cited.

2. The State elected to try the defendant upon the proof tending to show the commission of the offense at the time of the more recent occurrence shown by the testimony. The court, therefore, very properly instructed the jury that they could not convict upon the evidence relating to the prior occurrence, but that this testimony was for their consideration "simply to show the relations between the parties, and as a mere circumstance in the case, in connection with other circumstances, to be considered by the jury." The plaintiff in error alleges that the charge of the court in this respect "was error because it tended to mislead the jury, and should not have been submitted to the jury at all, it being outside of the case for which the defendant was indicted and being tried." As we have seen, this evidence was undoubtedly admissible for the purpose to which the court restricted it. It was therefore, to this extent, not outside but inside "of the case for which the defendant was indicted and being tried." We do not see how the jury could have been misled by a charge which so clearly and properly limited and defined the purpose for which this testimony could be considered by them.

3. The accused was not tried for an offense alleged to have been committed on the occasion to which the evidence objected to referred; the issue was whether he was guilty of the offense of fornication on the subsequent occasion shown by the testimony, and the evidence in question was simply collateral as to this main issue. It was certainly not rendered inadmissible for the purpose above indicated, and to which it was restricted by the court, merely because it had not been introduced before the grand jury.

4. The mere failure to charge upon the law relating to the impeachment of witnesses is not cause for a new trial, when it appears that the attention of the court was not directed to this

matter and no request to charge concerning it was made. *Smith* v. *Page*, 72 *Ga.* 539; *Cole* v. *Byrd*, 83 *Ga.* 207.

5. The evidence warranted the verdict rendered, and there was no error in refusing to grant a new trial.

<div align="center">

*Judgment affirmed.*    *All the Justices concurring.*