## William Claypool v. Allie E. Claypool.

1. SLANDER—*Evidence of—Subsequent Acts of Adultery.*—Under a plea of justification, evidence tending to prove acts of adultery subsequent to the speaking of the words and after the commencement of the suit, is competent, but such plea can not be supported by proof alone of acts occurring subsequently to the act imputed by the slanderous words.

2. ADULTERY—*How Proven.*—Adultery may be proven by circumstances from which it may be readily inferred.

3. EVIDENCE—*Decrees—When Not Competent.*—In an action of slander, a decree of divorce granted to the plaintiff from her first husband is not competent as evidence against the defendant, he not being a party to it, or bound by its recitals or findings.

Trespass on the Case, for slander.    Appeal from the Circuit Court of Menard County; the Hon. CYRUS EPLER, Judge, presiding.    Heard in this court at the November term, 1895.    Reversed and remanded. Opinion filed June 24, 1896.

T. W. McNEELY and BLANE & BLANE, attorneys for appellant.

The statute in this State provides that "the offense of adultery shall be sufficiently proved by circumstances which

raise the presumption of cohabitation and unlawful intimacy." R. S. Ill. 1893, Chap. 38, Sec. 12.

Acts prior and also subsequent to the act charged in an indictment when indicating a continuous illicit intercourse are admissible in evidence to show the relation and mutual disposition of the parties. State v. Witham, 72 Me. 531; State v. Williams, 76 Me. 480; People v. Hendrickson, 53 Mich. 525.

Such evidence is admissible without regard to the sufficiency of the other evidence to authorize a conviction. Cross v. State, 78 Ala. 430.

Evidence that the defendant and the *particeps criminis* were out riding together after the prosecution began was held admissible as tending to show adulterous association. State v. Stubbs (N. C.), 13 S. E. Rep. 90.

Facts tending to show adultery subsequent to the adulterous acts are admissible or not as a connection is established or not between the earlier or later transactions. Lawson v. State, 20 Ala. 65; Asabrooks v. State, 52 Ala. 24.

Evidence of adultery with the same party subsequent to the finding of an indictment is admissible " to corroborate facts proven to have taken place before." 2 Wharton on Criminal Law, § 2663.

In a case which had been temporarily suspended during its trial, for want of sufficient evidence of adultery, being resumed, proof that during the progress of the suit the alleged *particeps criminis* had frequently visited the defendant alone, remaining late at night, was received as sufficiently strengthening the former proof to justify the sentence of divorce. 2 Bishop on Marriage and Divorce, 625.

Evidence of prior and subsequent acts is admissible. State v. Bridgman, 49 Vt. 202.

Acts of adultery near the time alleged, competent in support of an indictment. Com. v. Nichols, 114 Mass. 285.

Evidence of subsequent acts is admissible to explain the relations of parties and in explanation of other acts of like nature within the time covered by the charge. Cole v. State, 6 Baxter (Tenn.), 239.

Anterior and subsequent acts of adultery may be proven in corroboration of acts charged.    State v. Way, 5 Neb. 283.

H. W. MASTERS and CHAS. NUSBAUM, attorneys for appellee.

When the evidence introduced by either party may be said to be sufficient to fully sustain a finding in his favor after two trials in the court below, this court will not interfere on the ground that the finding is against the weight of the evidence.    Barrett v. Guthrie, 17 Brad. 352.

The appellee contended the court was right in rejecting the evidence of subsequent acts, etc.

" It would be dangerous in the extreme to allow such proof.    The charge made was well calculated to stimulate assaults upon the virtue of a young woman, however innocent she might be in deportment, and then it would become the interest of the defendant to conspire to bring about the result which he imputed.    No authority is produced in support of this attempt, and policy forbids the allowance of such testimony."    Beggarly v. Craft, 31 Ga., page 309.

On a motion for a new trial for excessive damages, the damages must not only be more than the court would have awarded if it had tried the case, but they must, especially in actions of defamation, so greatly and grossly exceed what would be adequate in the judgment of the court, that they can not be reasonably accounted for, except on the theory that they were awarded under the influence of passion—of excited feeling rather than of sober judgment.    The damages must be so exorbitant as to shock the sense of the court, and satisfy it after making a just allowance for differences of opinion among fair-minded men.    Newell on Libel and Slander, Sec. 87, 911.

The amount of damages is always the subject for the exercise of the sound discretion of the jury.    A verdict will not be set aside unless the case be such as to furnish evidence of prejudice, partiality or corruption on the part of the jury. Blakeman v. Blakeman, 31 Minn. 396.

The jury is the tribunal provided by law to fix the dam-

Claypool v. Claypool.

ages in such cases as this, and unless the amount is so large as of itself to indicate passion on the part of the jury, the courts will not interfere. Hintz v. Graupner, 37 App. 517; Ill. Central R. R. Co. v. Simmons, 38 Ill. 242.

A verdict in a case of tort will not be disturbed on the ground of its being excessive unless it seems probable from the amount that the jury acted under the influence of prejudice and passion. Chicago R. R. Co. v. McKean, 40 Ill. 419; C., B. & Q. R. R. Co. v. Parks, 18 Ill. 460.

OPINION PER CURIAM.

The action was slander brought by appellee. The charge in the declaration was the appellant had repeatedly said the appellee was a whore. The appellant filed pleas of justification, wherein it was averred the appellee, before the speaking of the words set out in the declaration, had committed adultery with A. N. Melton, John Tackelson and John Stanley.

The case was submitted to a jury and a verdict returned in favor of appellee in the sum of $4,000.

Remittitur in the sum of $1,000 was entered—motion for new trial overruled and judgment rendered against the appellant in the sum of $3,000, to reverse which he has perfected this appeal.

Appellee became the wife of Edward Claypool (son of the appellant), in the month of July, 1889.

At that time she resided in Delevan, Illinois, but immediately after the marriage she and her husband made their home for a few months in the family of appellant in Menard county, Illinois, and then moved into an old house upon appellant's farm. Soon after, appellant built a new house for them on his farm, and they lived in it until their separation, which occurred October 30, 1893.

The immediate cause of their separation was the belief entertained by the husband that appellee was guilty of illicit sexual intercourse with Melton, and the appellant, during the course of their family troubles, spoke the words set forth in the declaration.

We have carefully read and considered the testimony.

Unless the jury were warranted in disbelieving the positive testimony of one witness supported by much corroborating testimony they should have found appellee guilty of adultery with John Stanley.

Circumstantial evidence was produced tending so strongly to establish the charge she had committed adultery with Melton after her marriage with appellant's son that we would without hesitation affirm a verdict of the jury to that effect.

Like testimony, little if any less convincing in character and weight, that she had sustained adulterous relations with Tackelson was introduced.

Other competent testimony confirmatory of the truth of the charges of her guilt with Melton and Tackelson was offered in behalf of appellant, but ruled inadmissible by the court.

The appellee and her husband separated October 30, 1893.

She began this action in slander in February, 1894, and soon after left her home on appellant's farm and removed to Greenview in the same county.

One C. P. Thompson testified to circumstances which occurred before the separation in 1893, from which an inference she was sustaining guilty relations with Melton readily arose.

Counsel for appellant then propounded a number of questions to the witness but the counsel for appellee objected to the witness answering them and the court sustained the objections.

Among such questions were the following:

Q.   I will ask you if a month or two after plaintiff moved to Greenview that summer you saw A. N. Melton go to the evening train and get on the platform as though he was going away on the train and then get off of the train on the other side and go up through town to the plaintiff's house?

Q.   After the beginning of this suit, in February, 1894, do you know anything about Melton frequenting plaintiff's house?

Q. I will ask you to state if, at any time after beginning of this suit, in February, 1894, you knew of any act of adultery having been committed between this plaintiff and A. N. Melton.

Ida M. Osterberg, a witness introduced by appellant, testified she lived in Greenview and directly across the street from appellee, and that she knew Melton.

She was asked to state whether she had seen Melton go to appellee's house and remain there after night and also whether Melton had not visited appellee at her home several times each week. The appellee objected to each of such questions and the court sustained the objection.

Mrs. Ed. Callaway was asked to state whether, since March, 1894, she had seen any acts of intimacy between plaintiff and Melton, but the court refused, upon the objection of appellee, to permit the witness to answer.

Counsel for appellant propounded following questions to Melton:

Q. I will ask you if, after this suit began, you did not go to her house the next night after this suit was instituted and stay all night?

Plaintiff objected to the question; the court sustained the objection and defendant excepted.

Q. I will ask you if you were not there a number of times from that or after this suit commenced, and stayed all night at her house?

Same objection by plaintiff; sustained by the court and exception taken.

Q. I will ask you if you did not, soon after this suit was brought, after she moved to Greenview, get on the cars going in the direction of Mason City, there, at Greenview, at night, and after the cars had started, get off at the south side of the car, go up between some other cars and go up to her house?

Plaintiff objected to the question; the court sustained the objection and defendant excepted.

Appellant offered to prove by the testimony of Walter Key that Tackelson, soon after the commencement of the

suit on the 24th day of February, 1894, went to appellee's house between eight and nine o'clock in the evening and remained in the house until about one o'clock at night, and that the witness saw Tackelson come from appellee's house about midnight about the first day of March, 1894; that on the first of these occasions there was a light in the house when Tackelson went in but it was extinguished soon after; but the court, upon the objection of the appellee, ruled the testimony was incompetent and rejected it.

Joshua Donaldson, witness for appellant, testified he was at appellee's house about the first of March, 1894, but the court refused, upon the objection of the appellee, to allow the witness to state who was at the house; whether Tackelson was there; what time of night he saw Tackelson there, if he saw him at all; whether Tackelson's horse was in the shed or barn at the place where appellee was living; whether the horse was saddled or not; whether he saw Tackelson come to the shed or barn and get a horse, and if so where he came from.

The ground of appellee's objections to all these questions, and of the action of the court in sustaining them, and holding the testimony inadmissible was, that it was not competent to prove acts of undue familiarity or even of adultery after the speaking of the words and after the beginning of the suit.

In this we think the court erred.

It would not, of course, be competent for a defendant to support a plea of justification by proof alone of acts occurring subsequently to the act imputed by the slanderous words.

Adultery may, however, be proven by proof of circumstance from which guilt may be readily inferred by a jury. Amer. & Eng. Ency. of Law, 2d Ed., Vol. 1, p. 752, and authorities cited in note 8.

When proof has been introduced designed to establish the guilt of certain parties of the charge of adultery within a certain period of time, and which tends to establish the same, then we think it is competent to introduce proof of subse-

quent acts of undue and improper intimacy, or of sexual intercourse between the same parties, as being explanatory of the criminating circumstances shown to have occurred within the period of time in question and as characterizing such circumstances.    Amer. & Eng. Ency. of Law, 2d Ed., Vol. 1, page 753, and note 8, and p. 754, and authorities cited in note 6.

There is some conflict of authorities upon the point, but we think the current is as we have stated.    We accept and approve it as the proper rule at any event.

The decree of divorce granted appellee from her first husband, John Fleming, was not competent as evidence against the appellant.    He was not party to it or bound by its recitals or findings.

The decree was offered in evidence over the objection of the appellant and held by the court to be competent.

It was not read to the jury but the court announced it was considered to be in evidence and counsel for appellee referred to it in the arguments and commented upon its contents.

This was error.    For the reasons indicated the judgment is reversed and the cause remanded.